## IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RECEIVED

2007 MAY -3  P 4: 40

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| Marous Brothers Construction, LLC, a corporation, and Gil Berry, an individual d/b/a Gil Berry & Associates, )<br><br>Plaintiffs, )<br><br>v. )<br><br>Alabama State University, a public corporation; W. Ken Upchurch, III, an individual; Percy Thomas, an individual; TCU Consulting Services, LLC, a corporation; Joe A. Lee, individually and in his official capacity as President of Alabama State University; Elton N. Dean, Sr., individually and in his official Capacity as Chairman of the Board of Trustees of Alabama State University, )<br><br>Defendants. ) | Civil Action No.: 2:07-CV-384-ID<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

## PARTIES

1.      Plaintiff Marous Brothers Construction ("Marous") is a limited liability corporation organized to do business in the State of Ohio with its principal place of business in Willoughby, Ohio.

2.      Plaintiff Gil Berry ("Berry") is an individual over the age of 19 years, is a citizen and resident of Jefferson Hills, Pennsylvania, and does business as Gil Berry & Associates ("GBA").

3.      Defendant Alabama State University ("ASU") is a public corporation and instrumentality of the State of Alabama with its principal place of business in Montgomery, Alabama.

4.      Defendant W. Ken Upchurch, III ("Upchurch") is an individual over the age of 19 years and upon information and belief is a citizen and resident of Montgomery County, Alabama. Upchurch is and, at all times material to this Complaint, was a principal of Defendant TCU Consulting Services, LLC.

5.      Defendant Percy Thomas is an individual over the age of 19 years and upon information and belief is a citizen and resident of Montgomery County, Alabama. Percy Thomas is and, at all times material to this Complaint, was a principal of Defendant TCU Consulting Services, LLC.

6.      Defendant TCU Consulting Services, LLC ("TCU") is an Alabama limited liability corporation organized to do business in the State of Alabama with its principal place of business in Montgomery, Alabama.

7.      Defendant Joe A. Lee ("President Lee") is an individual over the age of 19 years and upon information and belief is a citizen and resident of Montgomery County, Alabama. President Lee is and, at all times material to this Complaint, was the President of ASU. President Lee is a Defendant in this civil lawsuit both individually and in his official capacity as the President of ASU.

8.      Defendant Elton N. Dean, Sr. ("Dean") is an individual over the age of 19 years and upon information and belief is a citizen and resident of Montgomery County, Alabama. Dean is and, at all times material to this Complaint, was the Chairman of the Board of Trustees of

ASU. Dean is a Defendant in this civil lawsuit both individually and in his official capacity as the Chairman of the Board of Trustees of ASU.

## JURISDICTION

9.      Diversity jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy with respect to each defendant exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

10.      Venue is proper in the Middle District of Alabama, Northern Division, because all of the defendants are subject to personal jurisdiction in the Middle District. In addition, the events and omissions giving rise to the claims occurred primarily in the Northern Division of the Middle District.

## SUBSTANTIVE AVERMENTS

11.      In 2005, ASU decided to undertake the renovation of six student housing buildings on its campus: Bibb Graves, Abercrombie Hall, Bessie Benson, George N. Card Hall, Willease Simpson, and William Benson. The project was known as the Student Residence Project at ASU ("Student Residence Project"). ASU intended to obtain financing for the Student Residence Project by offering general revenue bonds.

12.      GBA and Student Suites, Inc. ("Student Suites") were hired by ASU and at ASU's request began working as developer for the purpose of designing, building, renovating, and financing the Student Residence Project. Student Suites is a Missouri-based student housing development company that works with colleges and universities to design, build, and assist in the

procurement of financing for the finance suite-style student housing. Student Suites is not a party to this civil action.

13.    On November 15, 2005, the ASU Trustees Property Committee passed a resolution naming GBA and Student Suites, Inc. as developers to design, build, renovate, and assist in the procurement of financing for the Student Residence Project. The resolution stated that its terms would become null and void if a final agreement was not reached on the design of and financing for the Student Residence Project.

14.    At the request of ASU and GBA, Marous was hired to document existing conditions, prepare design documents, and prepare documents outlining the intended scope of the renovation work. Marous's initiatives included, but were not limited to, several field visits to ASU with the full cooperation, encouragement, knowledge, and assistance of ASU. Marous incurred significant expenses and hours of design time, and at ASU's request prepared floor plans, elevations, and detailed cost estimates for each of the six subject dormitory buildings included in the Student Residence Project, as well as corresponding subject scope of work narratives.

15.    In late May 2006, upon reliance on the representations and resolution of the Board of ASU and President Lee, Marous provided its proprietary work product to ASU in spiral-bound 11x17 format. Marous's proposals addressed renovations to the six dormitories included in the Student Resident Project.

16.    On May 23, 2006, Gil Berry submitted to Freddie Gallot, Jr., Vice President of Fiscal Affairs for ASU, an invoice related to Part One Preconstruction Services. The invoice represented the work performed by GBA and Marous on preconstruction work to date for the Student Residence Project. It also included a copy of the invoice submitted by Marous to GBA

and Student Suites for Part One-Design/Building Services performed by Marous as of May 15, 2006. The total for the invoices was $374,229.49. These invoices were not paid.

17.    On June 15, 2006, Gil Berry had a telephone discussion with President Lee concerning the May 23, 2006 invoice and the invoice submitted by Marous. In reliance upon representations made by President Lee that payment in full on the invoices would be forthcoming, Berry agreed to wait for payment until the bond issue financing the Student Residence Project closed in early July 2006. Berry confirmed this agreement in an email dated June 5, 2006.    President Lee did not deny the agreement as confirmed by Berry.    Indeed, President Lee did not respond to the email at all, leading Berry and Marous to reasonably believe and rely upon the representations made by President Lee concerning payment.

18.    As noted, ASU received copies of Marous's proprietary work product in late May 2006. Thereafter, and utilizing Marous's proprietary work product for which Marous has never been paid, ASU instructed GBA and Student Suites to assist ASU's bond counsel in obtaining financing for the Student Residence Project. Marous's proprietary work product is referenced as an exhibit in the bond documents. In reliance upon representations made by ASU, including President Lee, GBA and Marous permitted the use of Marous's proprietary work product to procure the financing.

19.    ASU obtained $42,080,000.00 of Series 2006 bond issue (the "Bond"), dated August 1, 2006. The Bond's Preliminary Official Statement outlined estimated services and uses of funds for the Campus Housing Facilities Renovation.    The Bond stated that approximately $25,000,000 of the proceeds from the sale of the Series 2006 bonds would be used to pay for a portion of the cost of renovations to six existing student housing facilities on the University's campus. It referenced the following:

- 5 -

. . . . The campus housing facilities being renovated with a portion of the proceeds of the Series 2006 bonds will be converted to "suite-style" accommodations and will feature modern communications, wireless internet, enhanced security and other amenities currently favored by college students. The University will close two dormitories for renovation and has acquired a nearby apartment complex to house students displaced by the dormitory renovation project, which is expected to take place in three phases. While there can be no assurance thereof, the University expects to complete the first two dormitories by fall semester 2007 and to complete two additional dormitories by the beginning of each semester thereafter until all six are fully renovated by fall semester 2008.

As confirmed by the language of the Bond, the suite-style renovations proposed by Marous and GBA were within the scope of the Bond issue.

20.     Further, the Preliminary Official Statement listed the University's Residence Halls, the type of accommodations, the capacity and the per semester cost for each. It also specified which residence halls would be renovated and configured into "suite-style" residences as a component of the 2006 capital improvements. The targeted residence halls were the same ones on which plaintiffs performed preconstruction services at ASU's request. The work performed by Plaintiffs was the work upon which ASU relied in representing the purpose of the bond proceeds in the Preliminary Official Statement.  Upon information and belief, ASU has used and continues to use Plaintiffs' work product.

21.     As stated, the November 15, 2005 resolution provided that its terms would become null and void if a final agreement was not reached on the design of and financing for the Student Residence Project.  Marous furthered the interests of ASU by providing its proprietary work product to ASU, and ASU used this proprietary work product to its benefit in that this proprietary work product was used to obtain financing for the Student Residence Project.

22.     After Marous provided its proprietary work product to assist ASU in obtaining funding for the Student Residence Project, ASU's attorney, Kenneth Thomas, instructed GBA and Student Suites to form a single development entity that would be the developer-of-record for

the transaction. This entity was known as Student Suites Gil Berry and Associates, Alabama, LLC ("SSGBA").

23.    ASU, Marous, and SSGBA continued to revise the Development Agreement, even after the Student Residence Project had received full funding through the issuance of the bond. Plaintiffs suggested changes in the agreement and their email of suggested changes, dated July 20, 2006.

24.    Notwithstanding the representations of President Lee and ASU, GBA, Student Suites, and Marous remained unpaid even after the Bond issue financing the Student Residence Project closed.

25.    During or about July 2006, Dean requested that Berry meet with him and Percy Thomas at the Holiday Inn in Prattville, Alabama. During the meeting, Dean informed Berry, among other things, that Percy Thomas was "family" and "like his brother" and that Dean intended to make Percy Thomas and Upchurch, principals of TCU, the project managers for the ASU Student Residence Project. Dean stated to Berry, among other things, that Berry "needed to learn that we keep all this in the family," they were all "family sitting at the table," and if "one of us eats steak, we should all be eating steak." Berry rejected Dean's entrée.

26.    On July 28, 2006, Plaintiffs were informed by Kenneth Thomas, counsel for ASU, that Upchurch, Percy Thomas and their company, TCU, had been selected by ASU to assist President Lee as a part of the due diligence/review of the documents and the Development Agreement provided by the Plaintiffs.

27.    On August 16, 2006, ASU's counsel Kenneth Thomas, via his associate Ramadanah M. Salaam-Jones, sent revised comments to the Development Agreement to the interested parties, including Berry, President Lee, and Dick Davis of Student Suites.

28.     Judge Marvin Wiggins, an ASU Board Member, instructed Marous, GBA, and Student Suites send invoices for the work they had performed to Freddie Gallot, Jr., ASU's Vice-President for Fiscal Affairs.  Notwithstanding that these invoices were submitted as instructed, Marous, GBA and Student Suites have received no payment for the extensive work that they performed for ASU and which ASU and others have used for their benefit.

29.     Marous's Arne Goldman had extensive communication with Upchurch, ASU's designated owner's representative. Communications between Goldman and Upchurch included discussions related to Plaintiffs' fees and costs and a Memorandum from Marous to Upchurch setting forth in detail how the project fees were to be determined, the industry standard for such fees, and the amount of fees that Plaintiffs would agree to "give-back" on the Student Residence Project. Plaintiffs agreed to this "give-back" because ASU represented that such a concession in the negotiations would bring about the final approval of the Student Residence Project.

30.     On information and belief, Upchurch, Percy Thomas, and TCU took the information from the Marous memorandum and, abusing their position as the owner's representatives, advised the ASU Board that the fees ultimately earned by Plaintiffs would be approximately Seven Million Dollars ($7,000,000.00). Upchurch, Percy Thomas, and TCU recommended to the ASU Board that SSGBA and Marous should not be awarded the professional services contracts due to this alleged abusive fee submission set out above.  This false communication was not simply a mistake or a misunderstanding, since Plaintiffs had clearly set out the calculation of anticipated fees in the Memorandum: the construction management fee would be $1.545 million (6.32% of the total development cost) and the developer's fee would be $1.9 million (7.77% of the total development cost), for a total of $3.445 million in total fees,

which is far less than the $7,000,000 fee amount that Upchurch, Percy Thomas, and TCU advised the ASU Board SSGBA and Marous would receive.

31.    The false communication by Upchurch, Percy Thomas, and TCU to the ASU Board was in direct contradiction to their representations to the Plaintiffs at or about the same time, which were that they believed that the Plaintiffs' proposal was the best and most fair proposal and that they would recommend that ASU move forward with the Plaintiffs' proposal immediately. In reliance on these representations, Plaintiffs expended time and resources in furtherance of ASU's goal of the renovation of the Student Residence Project.

32.    On September 22, 2006, the Plaintiffs were informed that the ASU Board had voted not to continue to utilize Plaintiffs' services on the Student Residence Project. Instead, the Board hired its previously designated owner's representatives to perform all of the services required for the Student Residence Project that were to be provided by Plaintiffs: Upchurch, Percy Thomas, and TCU. Upon information and belief these representatives are using Marous's proprietary work product to perform the work on the Student Residence Project outlined in the bond offering.

33.    Following the vote by ASU's Board of Trustees that the Plaintiffs would not be utilized for the Student Residence Project, on September 25, 2006, Marous's Arne Goldman and Adelbert Marous, Jr. wrote a letter to President Lee outlining why the Board erred in making this decision.

34.    When President Lee failed to respond to Plaintiff Marous's letter, Gil Berry emailed ASU Board member Judge Wiggins on September 28, 2006, informing him that ASU was wrongfully in possession of Marous's work product. In the same email, ASU was put on

notice that no other architect was permitted to be hired on this project until all outstanding bills and invoices for work previously performed were settled.

35.      Receiving no response, Berry sent President Lee invoices representing total expenses incurred to date on the Student Residence Project. Berry's email specified that these invoices included previous invoices which had been sent to ASU on May 23, 2006, and again on July 10, 2006. These invoices had never been paid notwithstanding representations to the contrary by President Lee and others. The invoice for supervision of design/preconstruction services from Gil Berry and Associates was $196,585.68. The invoice for Marous for the preconstruction services was $454,777.00.

36.      Upon information and belief, ASU, Upchurch, Percy Thomas, and TCU are, in fact, performing the renovation work for the Student Residence Project, and are utilizing to their advantage the information that is Plaintiffs' proprietary work product for which Plaintiffs have not been paid.

37.      Despite non-payment, Plaintiffs remained committed to doing the work that they had agreed to perform and, up to the point at which ASU decided not to award a written professional services contract for renovations to Plaintiffs, Plaintiffs had completed their obligations in good faith and in full and complete reliance on the promises, representations, resolution and actions of the Board of ASU, President Lee, Upchurch, Dean, TCU, and Percy Thomas.

38.      Based on Plaintiffs' reliance on the assurances of ASU and its representatives, including but not limited to the Board of ASU, President Lee, Upchurch, Dean, TCU, and Percy Thomas, Plaintiffs performed all obligations to date and have not yet been compensated.

Plaintiffs are due to be compensated, and they are due to have their proprietary work product returned.

39.    As a result of the wrongful conduct of Defendants, Plaintiffs have been denied compensation due and owing, the opportunity to complete the project for which they expended great efforts, and undertook significant preparation. In addition, upon information and belief, Defendants continue to utilize Plaintiffs' proprietary work product and Defendants have converted said work product to their own use.

40.    Plaintiffs have been denied and hereby demand the full amount of their time, expenses, fees, and costs for their work on the Student Housing Project.

## COUNT ONE
## BREACH OF CONTRACT

41.    Plaintiffs incorporate by reference paragraph 1 through 40 as if fully stated herein.

42.    Plaintiffs and Defendant ASU entered into an agreement whereby ASU would pay Plaintiffs for development work to design, build, renovate, and procure financing for the Student Residence Project.

43.    The circumstances of this matter are such that, according to the ordinary course of dealing and the common understanding of men, they show a mutual intent to contract.

44.    All contracting parties had the legal capacity to enter into this implied contract.

45.    Plaintiffs gave consideration for the agreement in that they fully performed the agreed-upon work.  Plaintiffs submitted invoices to ASU totaling $651,362.68 (Six Hundred and Fifty-One Thousand, Three Hundred and Sixty-Two Dollars and Sixty-Eight cents) which remain unpaid.

46.     Defendant ASU accepted Plaintiffs' work product and has since used it to its benefit in securing the bond financing for the Student Residence Project and in the actual design and construction work on the project.   However, Defendant ASU has failed to compensate Plaintiffs, thus breaching the implied contract between Defendant ASU and Plaintiffs.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment and compensatory damages against Defendant ASU, plus attorneys' fees, interest, and costs, and any other relief which Plaintiffs may be entitled.

## COUNT TWO
## QUANTUM MERUIT

47.     Plaintiffs incorporate by reference paragraphs 1 through 46 as if fully stated herein.

48.     Plaintiffs have, at Defendants' direction, expended numerous hours on the development work for the design, building, renovation, and procurement of financing for the Student Residence Project at ASU.

49.     Defendants have knowingly accepted services rendered by the Plaintiffs, and have also knowingly accepted the benefits and results thereof.

50.     Because of the representations made by Defendants to Plaintiffs as set out more fully above, Plaintiffs had a reasonable expectation of compensation.

51.     Defendants' receipt of Plaintiffs' services without compensating Plaintiffs would be unjust.

52.     Based on the principle of quantum meruit, Defendants must compensate Plaintiffs for the reasonable value to Defendants of the services that Plaintiffs rendered.

53.     Plaintiffs have fully performed their work and submitted invoices to ASU for their work totaling $651,362.68 (Six Hundred and Fifty-One Thousand, Three Hundred and Sixty-Two Dollars and Sixty-Eight cents), which remain unpaid.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment and compensatory damages against Defendants, plus attorneys' fees, interest, and costs, and any other relief to which Plaintiffs may be entitled.

## COUNT THREE
## FRAUDULENT MISPRESENTATION

54.     Plaintiffs incorporate by reference paragraphs 1 through 53 as if fully stated herein.

55.     Defendants Upchurch, Percy Thomas, and TCU made false representations to Plaintiffs regarding material facts in this matter: that they believed that the Plaintiffs' proposal was the best and most fair proposal and that ASU should move forward with the Plaintiffs' proposal immediately.

56.     Defendants Upchurch, Percy Thomas, and TCU made these false representations intentionally or, if they made the false representations mistakenly, Defendants were so reckless in their conduct that they knew or should have known that Plaintiffs would rely on their misrepresentations and be injured as a result.

57.     Defendants Upchurch, Percy Thomas, and TCU made these false representations with malice, in that they intentionally made the false statements without just cause or excuse either with an intent to injure Plaintiffs or under such circumstances that the law will imply an evil intent to their actions.

58.     In reliance on these representations, Plaintiffs expended a great deal of time and resources in furtherance of ASU's goal of the renovation of the Student Residence Project.

59.      Plaintiffs relied on these representations to their detriment, in that Plaintiffs performed work, expended time, effort, and money for which they have not yet been compensated, and they were denied the opportunity to complete work and services on the Student Residence Project.

60.      Furthermore, Defendants Upchurch, Percy Thomas, and TCU received the contract to perform services for the Student Residence Project that these Defendants had led Plaintiffs to believe that they would receive.

61.      Furthermore, Defendant ASU continues to benefit from Plaintiffs' efforts to this day, and has not compensated Plaintiffs for their efforts or returned their proprietary work product at Plaintiffs' request.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request compensatory damages in an amount to be determined by a jury, plus punitive damages, attorneys' fees, interest, costs, interest, and other relief to which Plaintiffs may be entitled.

## COUNT FOUR
## FRAUD

62.      Plaintiffs incorporate by reference paragraphs 1 through 61 as if fully stated herein.

63.      Defendant President Lee made false representations to Plaintiffs regarding material facts in this matter: that they would be compensated for completing work for ASU on the Student Residence Project.

64.      Defendant President Lee made these false representations intentionally or, if he made the false representations mistakenly, Defendant President Lee was so reckless in his conduct that he knew or should have known that Plaintiffs would rely on his misrepresentations and be injured as a result.

65.    Defendant President Lee made these false representations with malice, in that he intentionally made the false statements without just cause or excuse either with an intent to injure Plaintiffs or under such circumstances that the law will imply an evil intent to his actions.

66.    Plaintiffs reasonably relied upon President Lee's false representations. In reliance on these representations, Plaintiffs expended a great deal of time and resources in furtherance of ASU's goal of the renovation of the Student Residence Project.

67.    Plaintiffs relied on these representations to their detriment, in that Plaintiffs performed work, expended time, effort, and money for which they have not yet been compensated, and they were denied the opportunity to complete work and services on the Student Residence Project.

68.    Plaintiffs suffered damage as a proximate consequence of President Lee's false representation in that Plaintiffs have fully performed their work and submitted invoices to ASU for their work totaling $651,362.68 (Six Hundred and Fifty-One Thousand, Three Hundred and Sixty-Two Dollars and Sixty-Eight cents), which remain unpaid.

WHEREFORE,    PREMISES    CONSIDERED,    Plaintiffs    respectfully    request compensatory damages in an amount to be determined by a jury, plus punitive damages, attorneys' fees, interest, costs, interest, and other relief to which Plaintiffs may be entitled.

## COUNT FIVE
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

69.    Plaintiffs incorporate by reference paragraphs 1 through 68 as if fully stated herein.

70.    Defendants Upchurch, Percy Thomas, and TCU knew of the existence of the business relationship between Plaintiffs and ASU. These Defendants intentionally interfered with the business relations and implied contract between the Plaintiffs and ASU by misrepresenting to

ASU and its board that the fees which Plaintiffs were to receive on the Student Residence Project.

71.    Defendants Upchurch, Percy Thomas, and TCU used their confidential relationship as owner's representatives to gain information about the business relationship between Plaintiffs and ASU, and using that information misrepresented Plaintiffs' position with respect to the work to be performed and fees to be charged for the performance of that work.

72.    There was no justification for the Defendants' interference with this business relationship and contract. Having misrepresented the facts concerning the fees to be charged by Plaintiffs, Defendants Upchurch, Percy Thomas, and TCU then undertook the work which Plaintiffs were to perform on the renovation of the student housing at ASU. Defendants Upchurch, Percy Thomas, and TCU abused their position as owner's representatives by encouraging the ASU Board of Trustees not to hire to Plaintiffs but, instead to hire them.  On information and belief, they continue to do the work, utilizing the confidential work product of Plaintiffs.

73.    As a result of these tortious interferences with business relations, Plaintiffs have been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request compensatory damages in an amount to be determined by a jury, plus punitive damages, interest, attorneys' fees, costs, interest, and other relief to which Plaintiffs may be entitled.

## COUNT SIX
## CONVERSION

74.    Plaintiffs incorporate by reference paragraphs 1 through 73 as if fully stated herein.

- 16 -

75.    Defendants wrongfully appropriated Plaintiffs' proprietary work product to their own use and beneficial enjoyment in exclusion of Plaintiffs' rights of ownership and to compensation.

76.    Defendants wrongfully appropriated Plaintiffs' proprietary work product after representing that Plaintiffs would be compensated for their work product.  Plaintiffs have submitted invoices for payment, but have not yet been compensated.

77.    Defendants have further wrongfully withheld possession of Plaintiffs' proprietary work product from Plaintiffs, without compensation, after Plaintiffs requested the return of their proprietary work product.

78.    Upon information and belief, Defendants are now using illegally using Plaintiffs' proprietary work product to their own use and beneficial enjoyment in that they are using Plaintiffs' proprietary work product in the renovation of the Student Residence Project without properly compensating Plaintiffs.

79.    Defendants have illegally converted ownership of Plaintiffs' proprietary work product as if it were their own.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request compensatory damages in an amount to be determined by a jury, plus punitive damages, attorneys' fees, interest, costs, interest, and other relief to which Plaintiffs may be entitled.

## COUNT SEVEN
## CONSPIRACY

80.    Plaintiffs incorporate by reference paragraphs 1 through 79 as if fully stated herein.

81.     Defendants Upchurch, Percy Thomas, TCU, President Lee, and Dean conspired together to intentionally interfere with the business relationship and implied contract between Plaintiffs and ASU and to cause injury and harm to Plaintiffs.

82.     Defendants Upchurch, Percy Thomas, TCU, President Lee, and Dean so interfered with the full knowledge and intent that their unlawful actions would result in harm to Plaintiffs, in the Plaintiffs being deprived of compensation due and owing under the business relationship, and in Plaintiffs further being deprived of the business opportunity of performing the remaining work on the Student Residence Project.

83.     The actions of Defendants Upchurch, Percy Thomas, TCU, President Lee, and Dean were designed with the intent to achieve the goal of procuring benefit to themselves while causing detriment to Plaintiffs.  Defendants Upchurch, Percy Thomas, TCU, President Lee, and Dean were successful in this endeavor.

WHEREFORE,    PREMISES    CONSIDERED,    Plaintiffs    respectfully    request compensatory damages in an amount to be determined by a jury, plus punitive damages, attorneys' fees, interest, costs, interest, and other relief to which Plaintiffs may be entitled.

## COUNT EIGHT
## LOSS OF BUSINESS OPPORTUNITY

84.     Plaintiffs incorporate herein by reference paragraph 1 through 83 as if fully stated herein.

85.     Defendants' actions directly and proximately caused Plaintiffs to lose significant business opportunities.

86.     Defendants' actions injured and damaged Plaintiffs.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request compensatory damages in an amount to be determined by a jury, plus punitive damages, attorneys' fees, interest, costs, interest, and other relief to which Plaintiffs may be entitled.

## COUNT NINE
## INJUNCTIVE AND OTHER RELIEF

87.     Plaintiffs incorporate herein by reference paragraph 1 through 86 as if fully stated herein.

88.     Plaintiffs seek injunctive and other relief to which they may equitably be entitled, including, but not limited to:

      a.   the enjoinment of Defendants from using Plaintiffs' work product; and

      b.   the return of Plaintiffs' proprietary work product.


Respectfully submitted this the 3rd day of May, 2007.

AUGUSTA S. DOWD (ASB-5274-d58a)
KATHERINE R. BROWN (ASB-4963-n77r)
Attorney for Plaintiffs


## JURY TRIAL DEMANDED
Plaintiffs demand a trial by jury of all issues triable by jury.


OF COUNSEL:
**WHITE ARNOLD ANDREWS & DOWD P.C.**
2025 Third Avenue North, Suite 600
Birmingham, Alabama 35203
Telephone: (205) 323-1888
Facsimile: (205) 323-8907

**SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

Alabama State University
915 South Jackson Street
Montgomery, AL 36101

W. Ken Upchurch, III
c/o W.K. Upchurch Construction Co.
1001 Monticello CT
Montgomery, AL 36117

Percy Thomas
c/o Thomas Masonry & Construction
3600 Mobile Hwy.
Montgomery, AL 36108

TCU Consulting Services, LLC
c/o W. Ken Upchurch, III
1001 Monticello CT
Montgomery, AL 36117

Joe A. Lee
c/o Alabama State University
915 South Jackson Street
Montgomery, AL 36101

Elton N. Dean, Sr.
c/o Montgomery County Commission
100 South Lawrence Street
Montgomery, AL 36104