IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Marous Brothers Construction, LLC, a corporation, and Gil Berry, an individual, d/b/a Gil Berry & Associates, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No.: 2:07-cv-00384-ID-CSC<br>) |
| Alabama State University, a public corporation; W. Ken Upchurch, III, an individual; Percy Thomas, an individual; TCU Consulting Services, LLC, a corporation; Joe A. Lee, individually and in his official capacity as President of Alabama State University; Elton N. Dean, Sr., individually and in his individual capacity as Chairman of the Board of Trustees of Alabama State University, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## REPLY TO RESPONSE IN OPPOSITION TO MOTION TO DISMISS

**COMES NOW** Plaintiff/Counterclaim Defendant Gil Berry (hereinafter "Berry") appearing by and through counsel, and submits this his Reply to the Response in Opposition to Motion to Dismiss filed by Defendants/Counterclaim Plaintiffs TCU Consulting Services, LLC, W. Ken Upchurch, III, and Percy Thomas (collectively hereinafter referred to as "Counterclaim Plaintiffs").

## INTRODUCTION

Counterclaim Plaintiffs filed their Counterclaim against Plaintiffs/Counterclaim Defendants Berry and Marous Brothers Construction (individually, hereinafter "Marous," collectively, hereinafter "Counterclaim Defendants") on September 5, 2007. Counterclaim Defendants filed their respective Motions to Dismiss the Counterclaim and accompanying briefs on September 25, 2007. Berry adopts and incorporates by reference each and every one of the arguments asserted in

his September 25, 2007 filings as if fully set forth herein. In accordance with this Court's order of October 1, 2007, Counterclaim Plaintiffs filed their Response in Opposition to Motion to Dismiss on October 15, 2007, and Berry timely files this Reply.

## ARGUMENT

As recognized by Counterclaim Plaintiffs, plaintiffs in defamation cases can be characterized as either: 1) public officials or figures; 2) limited-purpose public figures; or 3) private individuals. Little v. Breland, 93 F.3d 755, 757 (11th Cir. 1996). Furthermore, the court must determine the plaintiff's characterization as a matter of law. White v. Mobile Press Register, Inc., 514 So. 2d 902, 904 (Ala. 1987). Counterclaim Plaintiffs are limited-purpose public figures, and they have failed to sufficiently allege in their Counterclaim that Berry acted with actual malice in the alleged publication of defamatory statements; therefore, Berry's Motion to Dismiss the Counterclaim is due to be granted.

### 1.   THE CASES CITED BY COUNTERCLAIM PLAINTIFFS ARE INAPPOSITE AND INAPPLICABLE TO THE CASE AT BAR.

In their response, Counterclaim Plaintiffs cite various cases in support of their position that they should not be considered limited-purpose public figures for the purposes of their Counterclaim. The cases Counterclaim Plaintiffs cite are factually distinguishable or otherwise inapplicable to the instant case. For example, Counterclaim Plaintiffs cite Time, Inc. v. Firestone, 424 U.S. 448, 456 (1976) for their proposition that the United States Supreme Court has rejected the conclusion that persons can be considered public figures simply by virtue of receiving or benefiting from public funds. (Doc. 37, p. 7). However, the Time, Inc. case dealt with a completely different factual scenario than the instant case (a national magazine's press coverage of a divorce in a wealthy family) as well as a different legal issue (whether the New York Times rule automatically extends to all reports of judicial proceedings regardless of whether the case involves a public figure). The

facts are not analogous nor the reasoning of the Time, Inc. Court applicable to the public controversy at issue in the instant case.

Additionally, Counterclaim Plaintiffs rely heavily upon Hutchinson v. Proxmire, 443 U.S. 111 (1979), primarily for their contention that "[a]bsent the existence of a pre-defamation public controversy, TCU, Upchurch, and Thomas cannot be considered limited-purpose public figures." (Doc. 37, p. 8). The facts in the instant case are clearly distinguishable from the facts in Hutchinson, and, thus, Counterclaim Plaintiffs' reliance thereon is misplaced. As an initial matter, the Hutchinson opinion speaks to those who receive or benefit from public grants for research, Hutchinson, 443 U.S. at 135, not to those who receive or benefit from public monies for work in the for-profit arena. Hutchinson dealt with federal research grant monies received by a state employee, whereas the instant case focuses on the receipt of public monies by a private company and its principals. Also, the July 22, 2007 articles in *The Montgomery Advertiser* referenced in the Counterclaim (hereinafter the "July 22nd Articles") report that Counterclaim Plaintiffs have already received more than $600,000 from their work on the Student Residence Project ("SRP") at Alabama State University ("ASU"). This evokes the Weingarten v. Block opinion, where the court found Hutchinson to be inapposite where the defamation plaintiff "earned substantial amounts from his public assignments," causing there to be "sufficient concern about specific public expenditures to make him a public figure." Weingarten v. Block, 162 Cal. Rptr. 701, 711 (Cal. Ct. App. 1980). Like the court in Schiavone Construction Co. v. Time, Inc., this Court should find Hutchinson inapplicable because, unlike the plaintiff in Hutchinson, Counterclaim Plaintiffs were not, before *The Montgomery Advertiser* articles, "unknown, unassuming figures who were thrust unwillingly into the public eye." 847 F.2d 1069, 1078 n.9 (3rd Cir. 1988). Instead, Counterclaim Plaintiffs, who had also been involved with the use of public funds through the construction of a $75 million

3

jail in Montgomery and management of the Montgomery school district's $300 million construction plan, voluntarily became involved with the SRP at ASU, thus willingly becoming involved with the ongoing public controversy involving expenditures and management of funds by the university.

2. **COUNTERCLAIM DEFENDANTS HAVE MET THEIR BURDEN FOR A MOTION TO DISMISS.**

Counterclaim Plaintiffs assert that Counterclaim Defendants "offer no evidence" of the "substantial ramifications" of the public controversy. Counterclaim Plaintiffs mistake the burden Counterclaim Plaintiffs face in a motion to dismiss: the burden is not to present certain evidence, but instead to show that Counterclaim Plaintiffs failed to sufficiently allege in their Counterclaim that Counterclaim Defendants acted with actual malice in the alleged publication of defamatory statements. Berry has met this burden.

Counterclaim Plaintiffs are limited-purpose public figures, and the instant situation meets the three-prong test set out in Little: (1) there is a public controversy; (2) Counterclaim Plaintiffs are sufficiently involved in the public controversy; and (3) the alleged defamation was germane to Counterclaim Plaintiffs' participation in the controversy. Little, 93 F.3d at 757. As to the first prong, the controversy surrounding the use of public funds at ASU is a public controversy, because it is "a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." Cottrell v. Nat'l Collegiate Athletic Ass'n, Civ. Nos. 1041858, 1050436, and 1050437, 2007 WL 1696564 at *20 (Ala. June 1, 2007) (quoting Waldbaum v. Fairchild Publ'ns, Inc., 627 F.2d 1287, 1296-1298 (footnotes omitted)). Berry stands by his assertions that the impact of this public controversy on the ASU students and the taxpayers are "foreseeable and substantial ramifications." Id. When this Court asks "whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution," (Id.) it will find the answer to be "yes." Additionally, numerous articles appearing in *The Montgomery*

4

*Advertiser*, two of which were attached to Berry's Motion to Dismiss the Counterclaim and three of which are attached hereto, show that the use of public funds and overall conditions at ASU were public concerns that were being publicly debated. Because the dispute surrounding the use of public funds at ASU, specifically on the SRP, is a public controversy, Counterclaim Plaintiffs meet the first prong of the limited-purpose public figure test.

As to the second prong, Counterclaim Plaintiffs voluntarily injected themselves into the public controversy surrounding the use of public funds at ASU. It is clear that such a public controversy existed prior to the summer of 2006, despite Counterclaim Plaintiffs' assertion that "[a]t the time TCU was retained by ASU, however, there was no dispute, public or otherwise." As far back as 2001, *The Montgomery Advertiser* was reporting that various construction vendors were not being paid in a timely manner for bond-financed projects on the ASU campus; at that time, an ASU official said this inability of ASU to make timely payments for provided services would never be allowed to happen again. (Exhibit A). ASU trustees have squabbled about financial decisions since at least 1999, (Exhibit B), and in 2004 they were further divided by Governor Bob Riley's appointment of Oscar Crawley to the ASU board of trustees (Exhibit C). It is clear that by the time Counterclaim Plaintiffs voluntarily became involved in the SRP, the public debate over the ASU board of trustees and its management of public funds was widespread. Given the nature of the public controversy surrounding the use of public funds at ASU, Counterclaim Plaintiffs voluntarily injected themselves by first becoming Owner's Representatives and then providing the very development and construction management services for the SRP that were to have been provided by Marous and Berry. Counterclaim Plaintiffs took actions to become involved in the SRP, and as in Greenbelt Co-op. Pub. Ass'n v. Bresler, they should be found to be public figures in the community. 398 U.S. 6, 8 (1970) (finding Bresler's counsel's concession that Bresler was a public figure in the

5

community to be "clearly correct" where he was deeply involved in the future development of the city of Greenbelt, had entered into agreements with the city for zoning variances in the past and was again seeking variances, and was engaged in "negotiations of significant public concern" with school officials and the city council regarding construction of a school). Because Counterclaim Plaintiffs voluntarily injected themselves into the public controversy, they meet the second prong of the limited-purpose public figure test.

As to the third prong, the alleged defamation was germane to Counterclaim Plaintiffs' roles in the public controversy. As an initial matter, while Counterclaim Plaintiffs assert that Berry and Marous made accusations that Counterclaim Plaintiffs "provided illegal kickbacks and are otherwise dishonest," Counterclaim Plaintiffs fail to specifically identify those statements and the July 22nd Articles do not reflect such a quote by Berry or anyone from Marous. Despite Counterclaim Plaintiffs' failure to specifically identify any defamatory statements, the July 22nd Articles generally identified in the Counterclaim address budgetary and timing concerns, as well as the fact that ASU students would be living in hotel rooms off-campus because the SRP had not been completed. Furthermore, the July 22nd Articles outlined both the issues surrounding Counterclaim Plaintiffs' selection for the SRP and also addressed some of the issues in the instant lawsuit. Because the allegedly defamatory statements in the July 22nd Articles and, any similar statements, are germane to the public controversy surrounding the SRP, the statements meet the third and final prong of the limited-purpose public figure test.

Finally, Counterclaim Plaintiffs fail to sufficiently allege in their complaint that the alleged defamation was committed with actual malice. Because they are limited-purpose public figures, Counterclaim Plaintiffs must meet the standard from New York Times Co. v. Sullivan, wherein the United States Supreme Court held that, in a libel suit brought by a public official, the First

6

Amendment requires the plaintiff to show that the defendant acted with "actual malice" in publishing the defamatory statement, or "with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 254, 279-280 (1964). These Sullivan requirements have since been extended to libel suits brought by public figures as well as public officials. See, e.g., Curtis Publ'g Co. v. Butts, 388 U.S. 130 (1967). Rather than providing the requisite "clear and convincing evidence" of actual malice, the Counterclaim merely provides conclusory descriptions that Counterclaim Defendants "falsely and maliciously accused Counterclaim Plaintiffs" of various actions, and fail to identify the specific allegedly defamatory statements or to provide any evidence that the alleged publication was made with "actual malice." (Doc. 29, p. 2). The Counterclaim goes on to state that Counterclaim Defendants "intentionally, recklessly, maliciously, and/or negligently published" the allegedly defamatory statements. Id. Again, Counterclaim Plaintiffs make only conclusory allegations with no supporting factual assertions, fail to identify the specific statements contained within the July 22nd Articles which they allege are defamatory, and further fail sufficiently allege in their Counterclaim that Berry "entertained serious doubts as to the truth of their publication" or acted "with a high degree of awareness of the probable falsity" of the statements. Because Counterclaim Plaintiffs have failed to sufficiently allege in their Counterclaim that Berry acted with "actual malice" in allegedly publishing defamatory statements, the Counterclaim is due to be dismissed.

## CONCLUSION

Because Counterclaim Plaintiffs TCU Consulting Services, LLC, W. Ken Upchurch, III, and Percy Thomas are properly classified as limited-purpose public figures, and they fail to sufficiently allege in their Counterclaim that the allegedly defamatory statements were made with actual malice, their claims must fail.

7

WHEREFORE, PREMISES CONSIDERED, Plaintiff/Counterclaim Defendant Gil Berry respectfully requests that this Court grant his Motion to Dismiss the Counterclaim in this matter.

RESPECTFULLY SUBMITTED, this the 22nd day of October 2007.

**/s/ AUGUSTA S. DOWD**
AUGUSTA S. DOWD
STEVEN R. ARNOLD
JULIA S. ROTH
KATHERINE R. BROWN
Attorneys for Plaintiffs
Marous Brothers Construction, Inc. and Gil Berry

OF COUNSEL:
**WHITE ARNOLD ANDREWS & DOWD P.C.**
2025 Third Avenue North, Suite 600
Birmingham, Alabama  35203
Telephone: (205) 323-1888
Facsimile: (205) 323-8907
adowd@waadlaw.com
sarnold@waadlaw.com
jroth@waadlaw.com
kbrown@waadlaw.com

OF COUNSEL:
STANLEY J. MURPHY
Attorney for Plaintiffs
Marous Brothers Construction, Inc. and Gil Berry
**MURPHY & MURPHY LLC**
PO Box 3163
Tuscaloosa, AL 35403-3163
Telephone: (205) 349-1444
Facsimile: (205) 349-1445
murphyandmurphy@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the following counsel of record via the ECF system on this the 22nd day of October 2007.

J. Lister Hubbard
R. Brooke Lawson, III
Capell & Howard, P.C.
Post Office Box 2069
150 South Perry Street
Montgomery, Alabama 36102-2069
jlh@chlaw.com
rbl@chlaw.com

Kenneth L. Thomas
Christopher K. Whitehead
Ramadanah M. Salaam-Jones
Thomas, Means, Gillis, & Seay, P.C.
Post Drawer 5058
3121 Zelda Court
Montgomery, Alabama 36103-5058
klthomas@tmgslaw.com
ckwhitehead@tmgslaw.com
rsjones@tmgslaw.com

/s/ **AUGUSTA S. DOWD**
OF COUNSEL

# Montgomery Advertiser

Estimated printed pages: 3

June 13, 2001
**Section:** A
**Edition:** 03
**Page:** 01

### Late pay slows ASU projects
*Ken Roedl Montgomery Advertiser*

Trustee Joe L. Reed says money will be paid to companies by the end of this month

Construction on two major projects at Alabama State University has come to a near halt because of $400,000 owed to contractors, subcontractors and vendors working on those projects.

Construction officials said they can't afford to continue fronting money for the projects, a factor that has considerably delayed the completion of Lockhart Hall and the John Buskey Allied Health Science Center.

Several subcontractors have even left the projects until they are paid in full.

Greg Hilyer of Central Alabama Painting said he pulled his crew last week.

"Thursday was the first time I've been paid since January," Hilyer said following a meeting with construction officials that ASU trustee Joe L. Reed led Tuesday. "Money owed for April, May and June is still out there."

Reed, who was elected chairman of ASU's finance committee last month, pledged that all money owed for construction would be paid before June ends.

"We're saying that on the 29th of this month we expect to have checks in your hands," Reed said.

June 29 was identified as the final date because money going toward construction costs will come from a $5.1 million bond issue trustees approved May 11.

Reed said trustees must approve a few changes in the bond's language at the next board meeting, which is scheduled for June 19.

"Whatever we owe pertaining to these jobs, that's covered" in the bond money, Reed assured contractors.

Alabama State's fiscal officials have pushed a bond issue since the Sept. 26, 2000, board meeting. On Jan. 19, the school's vice president for fiscal affairs, Freddie Gallot, told finance committee members that the additional bond money was needed to replace funds that went into Bel Aire property acquisitions rather than construction.

The university had "reached a point of criticality where we need to complete renovations on Buskey and Lockhart," Gallot said during the January meeting that sent the bond issue to the full board for review. "Had we not used the $4.1 million to acquire additional property, we wouldn't be here talking about this right now."

The board then began considering other funding sources before going forward

with the bonds in May.

Reed apologized numerous times Tuesday for the university's inability to make timely payments for provided services.

"Never again, never again shall this be allowed to happen," he said.

Some contractors remained skeptical however, saying they'll only believe it when they have their money.

"Our payments are so scattered out we're working three months in arrears," said Neil Williams of NBC Acoustics, a subcontractor in Lockhart Hall's renovation.

His employees left the job site two weeks ago, he said.

"Our suppliers won't even send them anything unless it's C.O.D.," Williams said.

Leon Frazier, ASU's vice president for administrative services, said there has

been no official halt to construction but that "it has slowed down considerably

because of money owed the vendors."

Completion of work on the Buskey building should happen by the end of June, he said, with Lockhart facing a September completion.

Ken Roedl, a reporter for the Montgomery Advertiser, can be reached at 240-0118, or fax him at 261-1521. E-mail him at

kroedl@montgomeryadvertiser.com

Copyright (c) Montgomery Advertiser. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.

# Montgomery Advertiser

Estimated printed pages: 3

February 23, 1999
**Section:** Front Page

A
**Edition:** Montgomery
**Page:** 1

### TRUSTEES ASK FOR REEDS REMOVAL
*Malcomb Daniels*

TRUSTEES ASK FOR REED'S REMOVAL

Montgomery Advertiser

Argument: The trustees say the board can't make financial decisions because leadership posts are in doubt

Two members of the Alabama State University Board of Trustees asked a Montgomery judge Monday to remove Joe Reed as chairman, saying the school needs to move forward with the construction of a $14 million allied health building.

Robert Jones of Birmingham and Buford Crutcher of Huntsville testified in a hearing before Montgomery Circuit Judge Gene Reese that they would like to call a trustees meeting in March to deal with "urgent" school business. They contend the board can't proceed with making financial decisions because the leadership positions held by Reed and vice-chairman Frankye Underwood are in doubt.

The twelve-year terms of Reed and Underwood expired Jan. 31, 1999.

The ASU board, with six members voting in favor, have asked Reese to declare that the school's bylaws prohibit Reed and Underwood from holding office after their terms have expired.

After hearing evidence Monday, Reese said he has yet to decide if an immediate order is needed in the case.

"We want to know who has the authority to sign off and carry the university's business forward," Crutcher testified.

Both Crutcher and Jones told the judge that the board needs to call a meeting to handle matters dealing with the $14 million construction of an allied health program and to pass a $64 million budget.

Both men said the trustees needed to call a meeting promptly and know who's lawfully in charge to conduct business.

Reed said the contractor already has been hired for the building, the budget passed and that there is no rush for an immediate decision because the board is scheduled to vote on officers at its scheduled meeting in May.

"This is a power grab, and the question to be answered is do we want to continue on the same track, or do we want to end the turmoil we've had on the board since 1997," Reed said. "We've had turmoil since September 1997, and the university is in virtual paralysis."

Reed said the board members had made no attempt to call a meeting either through him or other channels.

He said that Monday was the first time he saw a letter written by Crutcher requesting a March meeting. Crutcher presented the court with the letter and a proposed agenda in which new officers would be selected at a March meeting. Reed said the agenda was written by Donald Watkins. Reed and Watkins have clashed on matters involving the board in recent years.

In a telephone interview, Watkins refuted Reed's assertion that Watkins drew up the agenda. Watkins also denied Reed's assertion

that Watkins is trying to become board chairman.

"I have no interest in being chairman," Watkins said.

Watkins said there is no power grab. He said there is question whether Reed should be on the board.

"It's not a power grab," Watkins said. "It's to determine who can lawfully hold the positions of chairman and vice-chair. (Reed) reminds me of a pastor whose about to lose his church and has no congregation."

Notes 1: With Photo / Mug of Reed

Copyright (c) Montgomery Advertiser. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.

# Montgomery Advertiser

Estimated printed pages: 3

May 29, 2004
Section: A
Edition: 01
Page: 02

## Court put Riley's choice on ASU board
*Jannell McGrew*

A Montgomery circuit judge has affirmed Gov. Bob Riley's appointment of Oscar Crawley to the Alabama State University board of trustees, but an ASU official indicated Friday the fight is not over.
Judge Charles Price, in a two-paragraph decision this week, ruled in favor of Riley in his lawsuit against ASU trustee Lister Hill Proctor, who refused to step down from his trustee position after the governor appointed Oscar Crawley to replace him.

"I'm glad this issue has been resolved, and I look forward to working with the president, board of trustees, faculty and students of ASU to move the university forward," Riley said Friday afternoon.

Former Gov. Don Siegelman, who left office last year, appointed Proctor to the ASU board, but the Senate never confirmed that appointment. The Senate also never considered Proctor's nomination. Riley withdrew the candidate's name after he took office in January 2003.

Trustee Joe Reed, vice chairman of the board, strongly disagreed with the court's ruling Friday and said the battle was not over.

There will be an appeal, Reed said.

"The court saw it differently than it was first believed," he said. "This is just round one. This will go to the state Supreme Court for the Supreme Court to decide."

The standoff between Riley and the board over the contested board member began after several trustees refused to acknowledge Crawley.

Riley took legal action against the board in January, after the ASU board had Crawley escorted from a trustees meeting by campus police because other board members refused to recognize his gubernatorial appointment.

Riley's lawsuit claimed Proctor had "attempted to usurp a seat" on the board

and that the board must recognize Crawley, not Proctor, as an official board member. The governor sought an injunction to bar Proctor from serving on the board and to prevent board members from denying Crawley a seat on the board. Several ASU trustees, including board Chairwoman Toreatha Johnson, had repeatedly refused to acknowledge Crawley, whom Riley appointed and the Senate approved last year. Instead, the board continued to recognize Proctor as a voting member. Johnson could not be reached Friday. Price ruled that Proctor's nomination to the board was not completed by action of the Senate, in affect, upholding Riley's appointment of Crawley. In a statement released by his attorney Friday, Crawley said: "I am very excited about the court's recognition of my right to be on the ASU board of trustees, and I eagerly await beginning service in my office as trustee." Kenneth Thomas, who argued the case in court, said the ruling was not a surprise. "This is what we had known all along, fully anticipated during the proceedings," Thomas said. "This was a lawsuit that never should have needed to have been filed. We are very comfortable with the court's ruling, and hopefully, Mr. Crawley will now be recognized as a legitimate member to the ASU board of trustees." Buford Crutcher was among those ASU board members who acknowledged Crawley as the new trustee member. Crutcher said he was relieved by the circuit court's ruling. "This should never have gone to court," the trustee said Friday. "This was obvious from the beginning who should have been on the board of trustees. This was a matter of law and I, as a novice, know what the law is. If a novice could understand what the law was, certainly our attorneys should have known, too." Crutcher added: "I knew from the beginning who the real trustees were on that board. I didn't have anything against Proctor; I just wanted them to follow the law." Reed said: "The position of Proctor and the board was that his appointment was valid, and I still believe that and the rest of us believe that," he said. ASU's attorney, Fred Gray, said he had just received a copy of the order and had forwarded it to the university's president, Joe Lee. He declined to comment, other than to say, "The court has ruled on it and I'm not going to rehash it."

Copyright (c) Montgomery Advertiser. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.