IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MAROUS BROTHERS CONSTRUCTION, LLC, a corporation, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:07cv384-ID ) (WO) |
| ALABAMA STATE UNIVERSITY, *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court are two motions to dismiss filed by Counterclaim Defendants Gil Berry ("Berry") and Marous Brothers Construction ("Marous"). (Doc. Nos. 32, 34.) The motions are accompanied by briefs.[1] (Doc. Nos. 33, 35.) Counterclaim Plaintiffs TCU Consulting Services, LLC ("TCU"), W. Ken Upchurch III ("Upchurch") and Percy Thomas ("Thomas") filed a response in opposition to the motions to dismiss.[2] (Doc. Nos. 37.) Berry and Marous filed replies. (Doc. Nos. 39, 40.) After careful consideration of the arguments of counsel, the relevant law, and the allegations in the counterclaim, the court finds that the motions are due to be denied.

---

[1] Berry and Marous are represented by the same counsel, and the motions and briefs filed on their behalves are substantially identical. The court, therefore, need not discuss the motions separately.

[2] The court refers to Berry and Marous collectively as "Counterclaim Defendants" and to TCU, Upchurch and Thomas collectively as "Counterclaim Plaintiffs."

## I.  JURISDICTION AND VENUE

Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332(a) (diversity).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both personal jurisdiction and venue.

## II.  STANDARD OF REVIEW

The court evaluates a Rule 12(b)(6) motion to dismiss a counterclaim in the same manner as a motion to dismiss a complaint.  See Fabricant v. Sears Roebuck, 202 F.R.D. 306, 308 (S.D. Fla. 2001); Fed. R. Civ. P. 12(b)(6).  In a prior memorandum opinion and order entered in this case (see Doc. No. 57), the court set out the standard of review governing Rule 12(b)(6) motions, and the court applies that standard in the following discussion and does not rely on "matters outside the pleading."  Fed. R. Civ. P. 12(b)(6); (see, e.g., Doc. No. 37, Exs. A-B.)

## III.  BACKGROUND

In this diversity action, Berry, who conducts business as Gil Berry & Associates, and Marous allege that they have not been paid for preconstruction services they provided in 2005 to Alabama State University ("ASU") concerning the renovation of six student housing buildings on ASU's campus and that the award of the final renovation contract to Thomas and Upchurch, as principals of TCU, was fraudulent, among other things.

Seeking relief under state law, Berry and Marous commenced this action on May 3, 2007, against ASU, TCU, Upchurch, Thomas and two other defendants.  (Doc. No. 1.)

TCU, Upchurch and Thomas filed an answer denying the charges, (Doc. No. 9), and, on September 5, 2007, filed a defamation counterclaim against Berry and Marous, alleging that in September 2006, "and possibly on other occasions," Berry and Marous "published false and defamatory statements" about them and that the defamatory statements appeared in two newspaper articles in the Montgomery Advertiser on July 22, 2007.[3]  (Doc. No. 29, ¶ 1.)  Specifically, it is alleged that Berry and Marous

> falsely and maliciously accused the Counterclaim Plaintiffs of (i) using unethical or illegal means to take the Alabama State University ("ASU") dorm renovation project at issue in this case from Berry and Marous; (ii) providing illegal "kickbacks" or other improper and illegal payments to ASU Trustees Elton Dean and John Knight; (iii) lying or fraudulently misrepresenting facts concerning Marous and Berry to the ASU Board of Trustees; and (iv) using illegal or other criminal means to secure other jobs or projects from ASU.

(Id. ¶ 2.)  As relief, the Counterclaim Plaintiffs seek compensatory and punitive damages and demand a trial by jury.  (Id. at 3.)

## IV.  DISCUSSION

Moving to dismiss the counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Counterclaim Defendants (*i.e.*, Berry and Marous) argue that,

---

[3] The newspaper articles are not attached to the counterclaim.  The Counterclaim Defendants, however, have submitted as exhibits to their motions to dismiss two articles published in the Montgomery Advertiser on July 22, 2007.

3

with respect to the alleged defamatory statements, the Counterclaim Plaintiffs (*i.e.*, TCU, Upchurch and Thomas) are limited-purpose public figures and that under Alabama law they have failed to adequately plead facts showing that the Counterclaim Defendants acted with actual malice in publishing the allegedly false statements. The Counterclaim Plaintiffs, however, maintain that they are private figures and that, therefore, the actual malice standard does not govern their defamation counterclaim.

Whether the Counterclaim Plaintiffs are to be characterized as limited-purpose public figures or private figures is a threshold "question of law" for the court to decide. See Cottrell v. National Collegiate Athletic Ass'n, ___ So.2d ___, 2007 WL 1696564, *19 (Ala. 2007). The distinction is critical on the burden of proof. If TCU, Upchurch and Thomas are limited-purpose public figures, then they must establish "by clear and convincing evidence that [each] defamatory statement was made with 'actual malice'– that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Id. (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964)). If, on the other hand, they are private figures, they need only show by a "preponderance of the evidence" that the Counterclaim Defendants "negligently published the defamatory statement[s]." Id. The Supreme Court of Alabama has adopted a three-part test to determine whether an allegedly defamed plaintiff is a limited-purpose public figure. The court must "(1) isolate the public controversy, (2) examine the plaintiff's involvement in the controversy, and (3) determine whether the alleged defamation [was] germane to the plaintiff's participation in the controversy." Id. at *20 (citations omitted).

The parties agree as to the legal test to be applied to determine whether the Counterclaim Plaintiffs are limited-purpose public figures. As indicated, the dispute arises in applying this test to the facts of this case. The court carefully has reviewed the parties' briefs in support of and in opposition to the motions to dismiss but, for the reasons to follow, finds that the motions are not appropriate for resolution at this stage of the litigation.

As an initial matter, generally speaking, the court must resolve a motion to dismiss for failure to state a claim on the face of the pleading which is being attacked. The counterclaim, however, does not allege that the Counterclaim Plaintiffs were limited-purpose public figures or otherwise set forth the facts which the Counterclaim Defendants say prove that the Counterclaim Plaintiffs are limited-purpose public figures. Rather, in support of their arguments, the Counterclaim Defendants rely on substantive facts "according to the July 22" articles published in the Montgomery Advertiser. (See, e.g., Doc. No. 33 at 5, 7.) For instance, the Counterclaim Defendants point out that the newspaper articles mention the plight of ASU students displaced by the unfinished dormitories, the anticipated expenses which ASU will incur for hotel rooms, security and transportation for those students, and that in the "second round of bid proposals," the lowest renovation estimate was $12 million over budget. (See Doc. No. 33-2 at 2.) The Counterclaim Defendants then ask the court to find on the basis of these facts that the selection of the Counterclaim Plaintiffs, instead of Marous and Berry, to spearhead the dormitory renovation project exponentially increased the cost of the project (which, in

5

turn, "directly impact[ed] taxpayers") and displaced ASU students from campus housing, and, thus, "had foreseeable and substantial ramifications for nonparticipants," thereby satisfying the "public controversy" element of the Cottrell test. (See Doc. No. 33 at 4-5); Cottrell, 2007 WL 1696564, at *20.

The Counterclaim Defendants' reliance on facts reported in the Montgomery Advertiser articles raises two threshold issues, neither of which has been addressed by the parties. First, there is the issue of whether the portions of the newspaper articles relied upon by the Counterclaim Defendants are "matters outside the pleading," which would require the court to convert the motion to dismiss to one for summary judgment. Fed. R. Civ. P. 12(b)(6). The second issue is whether the statements in the newspaper articles otherwise constitute facts which would be admissible in evidence. The court need not decide the first issue, because the second issue is dispositive. Namely, the Counterclaim Defendants overlook the limited evidentiary role newspaper articles play in defamation actions. See, e.g., Jauch v. Corley, 830 F.2d 47, 52 (5th Cir. 1987) (holding that newspaper article was not hearsay in discharged deputy sheriff's defamation suit against sheriff because newspaper was introduced only to prove that allegedly defamatory statements were made, not to prove truth of matter asserted); see Daniel E. Feld, Admissibility of Newspaper Article as Evidence of the Truth of the Facts Stated Therein, 55 A.L.R.3d 663, § 1[a], n.3 (1974). The cited newspaper statements, which are contested by Counterclaim Plaintiffs, are inadmissible hearsay because they were made by an out-of-court declarant (*i.e.*, the Montgomery Advertiser reporter) and are offered to

prove the truth of the matters asserted, and there has been no demonstration that the statements fall within an exception to the hearsay rule. Fed. R. Evid. 801(c); see also U.S. v. Baker, 432 F.3d 1189, 1211 (11th Cir. 2005) (newspaper articles are inadmissible hearsay when "relevant primarily to establish the truth of their contents"); Poretto v. U.S., 196 F.2d 392, 395 (5th Cir. 1952) ("newspaper articles are not admissible as proof of the facts stated therein"). The statements in the newspaper articles upon which the Counterclaim Defendants rely, thus, are not proper for consideration. Cf. Macuba v. Deboer, 193 F.3d 1316, 1322-254 (11th Cir. 1999) (holding that district court erred in considering on summary judgment deposition testimony which was "rank hearsay").

As a final point, the court observes that none of the cases relied upon by the Counterclaim Defendants was decided on a motion to dismiss, but rather all of the cases were decided on the basis of evidentiary facts at later stages of the litigation. See, e.g., Little v. Breland, 93 F.3d 755 (11th Cir. 1996) (appeal from jury verdict); White v. Mobile Press Register, 514 So.2d 902 (Ala. 1987) (appeal from summary judgment). Based upon the present record, the court finds, as have other courts in similar circumstances, that whether the Counterclaim Plaintiffs are limited-purpose public figures is more appropriate for resolution at the summary judgment stage on the basis of evidentiary facts. See, e.g., Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp.2d 1035, 1044 n.1 (C.D. Cal. 1998) (applying California defamation law and noting that "it would be premature to determine, on a motion to dismiss, whether [plaintiff] is a public figure or whether the alleged statements were made with actual malice"); Zerbe v. Guzman Pinal,

7

No. Civ. 05-DS-21-JD, 2005 WL 2671339, at *1 & n.1 (D. Puerto Rico Oct. 18, 2005) (noting that whether plaintiff was a public figure "was more appropriately addressed in the context of a motion for summary judgment," than a motion to dismiss, where the complaint did not allege that the plaintiff was a public figure and the plaintiff denied the categorization in his objection to the motion to dismiss).  In short, the court is unable to conclude at this stage of the litigation that the Counterclaim Plaintiffs are limited-purpose public figures who are required to allege actual malice.

## V.  ORDER

Accordingly, it is CONSIDERED and ORDERED that Defendants' motions to dismiss (Doc. Nos. 32, 34) be and the same are hereby DENIED.

DONE this 11th day of February, 2008.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).