IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MAROUS BROTHERS CONSTRUCTION, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 2:07-cv-384-ID ) |
| ALABAMA STATE UNIVERSITY, *et al.*, | ) (WO) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Marous Brothers Construction ("MBC") and Gil Berry bring this action against Alabama State University ("ASU"), W. Ken Upchurch, Percy Thomas, TCU Consulting Services ("TCU"), Joe A. Lee, and Elton N. Dean, Sr., alleging that Defendants breached an implied contract and committed various torts in connection with a project to renovate ASU dormitories. Defendants TCU, Upchurch, and Thomas have also filed a counterclaim against Berry for defamation. This cause is before the Court on Defendants' Motions for Summary Judgment (Docs. ## 98, 100, 103) and Defendants' Motions to Strike (Docs. ## 132, 135). The Court has carefully considered all submissions in support of and in opposition to the motions and the relevant case law. The Court addresses each claim below.

### **I. JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28

U.S.C. § 1332 (diversity). The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden

by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III. FACTS

The Court has carefully considered all deposition excerpts and documents submitted

in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Plaintiff Gil Berry is the owner of Gil Berry and Associates ("GBA"), a consulting firm based in Pennsylvania.

Plaintiff Marous Brothers Construction, Inc. ("MBC") is an Ohio-based company that specializes in historic renovations, the construction of multi-family residences, and hospitality-related projects. Arne Goldman is the Director of Business for MBC.

Student Suites is a Missouri-based company that develops and finances new student housing for universities. Dick Davis is the Director of Development, Acquisition and Finance for Student Suites.

TCU Consulting Services, Inc. ("TCU") serves as the "owner's representative" for construction projects at ASU, including the University's dormitory renovations. Ken Upchurch and Percy Thomas are principles of TCU.

Elton N. Dean is the Chairman of the ASU Board of Trustees. He has served in this capacity since 2005. Joe A. Lee is the President of ASU. He has served in this capacity since 2001.

Berry became aware that ASU had a potential student housing project in the summer of 2005. Berry contacted MBC and Student Suites regarding the project, and the three companies decided to work together to present a proposal to ASU to renovate six dormitories and construct a new student housing facility ("the ASU dormitory renovation project").

In July, 2005, Berry met with the ASU officials responsible for improving student housing. Subsequent to this meeting, ASU authorized GBA, Student Suites, and MBC to tour its dormitories in order to prepare the proposal.

On September 20, 2005, GBA, MBC, and Student Suites presented their proposal to ASU for the dormitory renovation project. The proposal was presented to Dr. Leon Frazier, former Vice President of Administrative Services at ASU, and several other ASU officials responsible for improving student housing at ASU.

On November 9, 2005, Berry and Davis sent a letter to the ASU Trustee Board. The letter enclosed a revised plan regarding the proposal to redevelop the student housing at ASU. It also requested that the Board pass a resolution drafted by Student Suites, GBA, and MBC "to allow our team to work with the Alabama State University Staff to further define the exact scope of work along with the most attractive financing packages available." This draft resolution, which was attached to a letter signed by Berry, stated:

> BE IT RESOLVED that the Board of Trustees designates Student Suites, Inc. and Gil Berry and Associates as its developer for the purpose of Designing, Building Renovating, and Financing a proposed Student Housing Redevelopment Master Plan per the proposal submitted October 28, 2005.
>
> *It is mutually understood that if final agreement is not reached on more detailed design and financing structures that this Resolution will become void <u>with no expense to Alabama State University</u>.*

(emphasis added). According to Davis, both Berry and MBC knew of and consented to the draft resolution being sent to ASU.

On November 15, 2005, the ASU Board of Trustees Property Committee approved

5

in principle for presentation to the full Board a proposed resolution that stated:

> the Board of Trustees hereby authorizes the President of the University to engage Student Suites, Inc., and Gil Berry and Associates as developer for the purpose of developing a Student Housing Redevelopment master Plan for designing, building, renovating, and financing student housing on campus. *It is mutually understood that if final agreement is not reached on more detailed design and financing structures that this Resolution will become void <u>with no expense to Alabama State University</u>.*

(emphasis added). Both Berry and MBC received notice of this resolution.

On November 18, 2005, Goldman prepared a Letter of Intent to define the relationship between Student Suites, GBA, and MBC. The Letter of Intent designated Student Suites and GBA as "the developer" and MBC as "the Design/Builder." The Letter of Intent provided:

> 5) During various stages of the pre-construction phase of the Project, the Design/Builder shall present to the Developer a guaranteed maximum price (GMP) for the hard construction cost for the Project. . . . The Design/Builder shall issue the GMP to coincide with the completion of their schematic design work. If the Developer or Alabama State University elect to abandon the Project at that time for any reason, then the Developer and/or Alabama State University will be responsible for paying the Design/Builder only for pre-construction services rendered by the Design/Builder up to the time that the GMP has been issued. . .
>
> 6) If, after receiving the GMP, the Developer elects to proceed with the Project, the Design/Builder shall continue to provide pre-construction services through the design development phase. . . . At the conclusion of the design development phase, the Design/Builder shall issue a revised GMP to the Developer . . . . If the Developer or Alabama State University elect to abandon the Project at this time for any reason, then the Developer and/or Alabama State University shall promptly remit $115,800.00 plus travel expenses as payment-in-full for pre-construction services . . . .
>
> . . .

8) If the Developer or Alabama State University elect to abandon the Project after the lump sum, fixed-fee contract amount has been determined by the Design/Builder and prior to construction for any reason, or if the Developer elects to select another entity for the construction of the Project, then the Developer shall promptly remit payment of $248,000.00 plus travel expenses to the Design/Builder for pre-construction services rendered as payment-in-full.

The Letter of Intent contained signature lines for Student Suites, GBA, and MBC. ASU was not an intended party to the Letter of Intent. Furthermore, the Letter of Intent was never signed by any party.

During the winter and srping of 2006, MBC prepared a product that outlined the Scope of Work for the ASU dormitory renovation project. MBC gave copies of the Scope of Work to Berry to distribute.

At a meeting on May 5, 2006, the ASU Board of Trustees agreed "to engage Student Suites as the contractor to renovate six University residence Halls, and build one new suite style residence hall at Alabama State University." Sometime later, ASU decided not to build the new residence hall and to only renovate the six dormitories.

On May 15, 2006, MBC sent an invoice to Student Suites and GBA in the amount of $297,500.00 for "Part 1 Design Build & Preconstruction Services Rendered to Date" on the ASU dormitory renovation project. On May 23, 2006, GBA sent an invoice to ASU in the amount of $76,729.49 for "Part 1 Supervision of Design/Build Preconstruction Services." Neither of these invoices were paid.

Also in May 2005, Davis incorporated the entity "Student Suites Gil Berry Associates,

LLC" ("SSGBA") in the State of Alabama. On July 9, 2006, Davis emailed a draft "Development Agreement" ("the Agreement"), which was the proposed contract between SSGBA and ASU for the dormitory renovation project. While MBC was identified in the draft agreement, MBC was not a party to the agreement. The Development Agreement was revised several times, but it was never signed.

On July 26, 2006, ASU notified Berry that it had engaged TCU to assist ASU by performing due diligence in reviewing the Plaintiffs' proposal. ASU requested permission for TCU to review the Scope of Work prepared by MBC. Berry authorized TCU to review the Scope of Work. On July 28, 2006, MBC sent an email to Berry stating the conditions upon the use of MBC's proprietary Scope of Work. The email stated:

> a) . . . We have prepared our work product in good faith *based upon our verbal agreement with you and Richard Davis*, knowing that as of this date, we have received no compensation for our efforts.
>
> b) *We understand that you are close to signing your Development Agreement with Alabama State University, at which time we will execute our construction Management contract and receive compensation* for the extensive pre-construction services we have rendered on behalf of ASU and your development team; however, until that time, no one is authorized to use our work product without our permission.

(emphasis added).

On July 28, 2006, TCU was retained by ASU to serve as the owner's representative. TCU reviewed the proposed development agreement and Scope of Work and communicated its questions and concerns with MBC. On August 16, 2006, ASU emailed Berry and Davis proposed revisions to the Agreement. On August 18, 2006, Davis wrote a letter to President

8

Lee that stated that SSGBA's position was that certain proposed changes were "not acceptable." The changes which SSGBA would not accept were requiring SSGBA to be responsible for the fees and expenses of consultants or project managers hired by ASU, and delaying the initial payment of four percent until the commencement of construction.

On September 19, 2006, ASU emailed Berry that President Lee wanted the developer's fee provided in the Agreement to be reduced by $1 Million. On September 20, 2006, Berry sent ASU a letter that the developer's fee could not be reduced more than $600,000.

On September 22, 2006, the ASU Board of Trustees met. At that meeting, President Lee recommended that the Board reject the Agreement proposed by SSGBA for the dormitory renovation project. The Board approved President Lee's recommendation and chose not to engage SSGBA for the project.

On September 28, 2006, President Lee sent Berry a letter explaining his decision not to recommend GBA and Student Suites' proposal for the dormitory renovation project.

On October 3, 2006, Berry forwarded invoices for GBA, MBC and Student Suites to ASU. GBA's invoice was in the amount of $196,585.68, Student Suites' invoice was in the amount of $95,975.00, and MBC's invoice was in the amount of $454,777.00. ASU did not pay these invoices. On October 23, 2006, ASU collected all documents from GBA, Student Suites, and MBC that were in its possession and returned them to Berry.

Plaintiffs filed this action on May 3, 2007.

## IV.  DISCUSSION

When a federal court decides a state law claim it applies the choice of law rules of the jurisdiction in which it sits.  *Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC*, 307 F. Supp. 2d 1249, 1258-59 (M.D. Ala. 2004) (Albritton, C.J.) (citing *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998).  In this case, the Court will apply the law of the State of Alabama.  *See Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 293 (Ala. 2007) (Alabama choice of law rules in contract claims require court to apply the law of the state where the contract was formed); *Twin City Fire Ins. Co. v. Colonial Life & Acc. Ins. Co.*, 124 F. Supp. 2d 1243, 1248 (M.D. Ala. 2000) (DeMent, J.) (Alabama choice of law rules for tort claims require court to apply the law of the state where the harm occurred).  Moreover, all of the parties agree that Alabama law governs this case.

**A.     MBC's Claims**

MBC has voluntarily dismissed all of its claims except its quantum meruit claim.  In order to succeed on a claim of quantum meruit, a plaintiff must show that (1) he provided a benefit that was knowingly accepted, and (2) he had a reasonable expectation of being compensated for those services.  *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006).

The Court finds that MBC did not have a reasonable expectation of being compensated by ASU for the work it performed.  In November 2005—well before MBC started working to prepare the Scope of Work—the ASU Board of Trustees adopted a resolution, *which had been drafted and proposed to ASU by Student Suites and GBA*, that

10

stated "It is mutually understood that if final agreement is not reached on more detailed design and financing structures that this Resolution will become void *with no expense to Alabama State University*." (emphasis added). MBC does not dispute that it had notice of this resolution and that no "final agreement" was ever reached. When presented with such a clear statement, a reasonable person would understand that any work performed attempting to obtain a contract, prior to reaching a "final agreement," would be performed at their own risk if no final agreement was ever reached. Therefore, any expectation of compensation under these circumstances would be unreasonable. *See Utah Foam Prods. v. Polytec, Inc.*, 584 So. 2d 1345, 1350-51 (Ala. 1991) (plaintiff contractors did not have reasonable expectation of compensation for work performed attempting to secure a contract).

**B.     Berry's Claims[1]**

    **1.     Claims Against ASU, Lee, and Dean Only**

        **a.     Breach of Contract and Quantum Meruit Claims**

Berry has not presented this Court with any evidence of an express contract, therefore his breach of contract claim fails to that extent. Furthermore, Berry's breach of implied contract and quantum meruit claims fail for the same reasons that MBC's fail. *See supra* Part IV.A.

        **b.     Fraud**

---

[1] The Court notes that Berry's briefs in opposition to summary judgment do not cite any caselaw relevant to his claims. Moreover, Berry does not make any substantive arguments beyond repeating legal conclusions without any factual or legal support.

Berry's Complaint includes a claim of fraud against Lee. However, Berry does not specify what statements or conduct on the part of Lee he believes were fraudulent. The affidavit of Berry submitted in support of his opposition to summary judgment does not reference any alleged fraudulent statements by Lee. Accordingly, Berry has not met his burden of proof, and Lee is entitled to summary judgment on this claim.

### 2. Claims Against TCU, Upchurch, and Thomas

#### a. Fraudulent Misrepresentation

To recover for a claim of fraudulent misrepresentation, the plaintiff must prove (1) a false representation (2) of a material fact (3) that the plaintiff reasonably relied on, (4) which was the proximate cause of damage sustained by the plaintiff. *See Davis v. Sterne, Agee and Leach, Inc.*, 965 So. 2d 1076, 1094 (Ala. 2007). In Count Three of Plaintiffs' Amended Complaint (Doc. # 59), Plaintiffs state that the allegedly false representation made by TCU, Upchurch, and Thomas is "that they believed that the Plaintiffs' proposal was the best and most fair proposal and that ASU should move forward with the Plaintiffs' proposal immediately." Furthermore, in his deposition, Berry admits that this statement is the sole basis for the fraudulent misrepresentation claim.

Berry states in his deposition that he had only one meeting with TCU, that the statement was made to Goldman and not him, and that he never heard the alleged statement. Accordingly, Berry has not presented this Court with sufficient evidence that a reasonable jury could find the statement was actually made. Furthermore, the statements Berry alleges

were false were not statements of fact, but rather statements of opinion, which can not form the basis of a fraudulent misrepresentation claim. *See Ray v. Montgomery*, 399 So. 2d 230, 232 (Ala. 1980) (seller's claims that house was "a nice house" and "in good condition" were statements of opinion and not material fact); *Lawson v. Cagle*, 504 So. 2d 226, 227 (Ala. 1987) (predictions as to events to occur in the future are generally regarded as statements of opinion only). Moreover, Berry admitted in his deposition that these statements were statements of opinion. When a plaintiff admits a statement is an opinion, he is unjustified as a matter of law in relying on it as a material fact. *See Jones v. McGuffin*, 454 So. 2d 509, 512 (Ala. 1984). Lastly, Berry also admitted in his deposition that he did not rely on the alleged misrepresentations. Under these circumstances, the Court finds that Defendants are entitled to summary judgment on Berry's fraudulent misrepresentation claim.

In Berry's affidavit, he suddenly alleges an additional basis for his fraudulent misrepresentation claim: "The crux of SSGBA's fraudulent claims is that TCU misrepresented that it had been hired by ASU to review SSGBA's work, and thereby obtained copies of SSGBA's proprietary work, which it subsequently used to obtain $42,000,000 in funding, and to bill ASU in the approximate amount of $3,000,000."

However, Berry clearly limited his fraudulent misrepresentation claim to the alleged misrepresentation by TCU "that they believed that the Plaintiffs' proposal was the best and most fair proposal and that ASU should move forward with the Plaintiffs' proposal immediately." Berry so limited his claim in the Amended Complaint and his deposition. A

plaintiff may not amend his complaint at summary judgment. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Accordingly, this Court will not address this untimely claim.

### b.     Tortious Interference With Contract

In order to prove a claim of tortious interference with contract, the plaintiff must show (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; (4) the absence of justification for the defendant's interference; and (5) damage to the plaintiff as a result of the interference. *See Parsons v. Aaron*, 849 So. 2d 932, 946 (Ala. 2002).

A defendant is not liable for tortious interference with contract if that party is a "participant" to the contract or business relationship at issue. *See Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1157 (Ala. 2003). Such a justification is an affirmative defense, and the burden of proof is on the defendant. *Parsons,* 849 So. 2d at 946. The defendant does not have to be a party to the contract in order to be a "participant" and thus shielded from liability. *Waddell & Reed*, 875 So. 2d at 1157. A "participant" is one who is involved in a business relationship arising from interwoven contractual arrangements that include the contract at issue. *Id.* If the participant has a legitimate economic interest in and a legitimate relationship to the contract, then the participant enjoys a privilege of becoming involved without being accused of interfering with the contract. *Id.*

Berry has admitted, in the Amended Complaint and in his deposition, that TCU had a relationship with ASU as owner's representative on the dormitory restoration project. Berry further admitted in his deposition that TCU had a right and obligation to review SSGBA's proposal on behalf of ASU. This Court finds that TCU's relationship with ASU as "owner's representative" on the dormitory restoration project makes them a "participant" in the business relationship between SSGBA and ASU. As such, they were not strangers to the relationship and any alleged interference on their behalf would have been justified. Therefore, Defendants are entitled to summary judgment on Berry's tortious interference with contract claim.

### 3. Claims Against All Defendants

#### a. Conversion

Berry does not present any facts or argument to support his conversion claim. In Berry's affidavit, he claims that "SSGBA's proprietary work product" was wrongfully appropriated and used to acquire funding. However, Berry has not presented any evidence or legal argument that ASU's issuance of Fee Revenue Bonds in 2006, or any other action taken by Defendants, constituted a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property. *See Crown Life Ins. Co. v. Smith*, 657 So.2d 821, 823 (Ala. 1994). Indeed, Berry even admits in his deposition that he has no evidence that Defendants used his work product in the renovation of the ASU dormitories. Therefore, Defendants are entitled

to summary judgment on this claim.

### b. Loss of Business Opportunity

Berry claims that Defendants are liable for "loss of business opportunity." However, this Court has found no case that identifies "loss of business opportunity" under Alabama law as a cause of action (as opposed to a form of damages), and Berry certainly fails to identify such a case. Regardless, Berry has not presented evidence that any business opportunity was actually lost, or evidence that Defendants caused Berry to lose business. Accordingly, Defendants are entitled to summary judgment on this Claim.

### c. Civil Conspiracy

Liability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy. *Hooper v. Columbus Reg'l Healthcare Sys.*, 956 So. 2d 1135, 1141 (Ala. 2006). Therefore, because none of Berry's underlying allegations have merit, neither does his civil conspiracy claim.

### 4. TCU's Counterclaim

Defendants TCU, Upchurch, and Thomas have filed a counterclaim against Berry for defamation. In order to establish a claim for defamation, TCU has the burden to prove: (1) a false and defamatory statement concerning TCU; (2) an unprivileged communication of that statement to a third party; (3) fault amounting at least to negligence on the part of Berry; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *McCaig v. Talladega Pub. Co.*, 544

So. 2d 875, 877 (Ala. 1989). TCU alleges that Berry told several individuals that TCU was using "illegal" and "unethical" means to "steal" Berry's business from ASU. In his deposition, Berry admitted that he did make these statements to these individuals.

In determining whether Berry acted negligently in publishing the allegedly defamatory communications to third parties, a court may take into account (a) the thoroughness of the check that a reasonable person would make before publishing the statement, (b) the nature of the interests that Berry was seeking to promote in publishing the statement, and (3) the extent of damage to which the statement exposed the plaintiff's reputation. *Mead Corp. v. Hicks*, 448 So. 2d 308, 312 (Ala. 1984).

With respect to the first factor, the Court finds that TCU has presented evidence that Berry did not verify the veracity of his claims with the same thoroughness that a reasonable person would use. Berry had no evidence that TCU used SSGBA's proprietary work product on the dormitory restoration project, and he certainly had no evidence that TCU was using "illegal" means to get ASU to deny SSGBA the contract. Therefore, this factor weighs in TCU's favor.

The second factor is the nature of the interests that Berry was seeking to promote in making the statement. "Informing the public as to a matter of public concern is an important interest in a democracy; spreading of mere gossip is of less importance. . . . If there was no substantial interest to protect in publishing the communication to these recipients, then a reasonable person would be hesitant to publish the communication unless he had good reason

17

to believe that it was accurate." Restatement (Second) of Torts § 580B cmt. h (2008). The Court finds that Berry's statements to these individuals was self-serving and was not intended to protect a "substantial interest." Accordingly, this factor weighs in favor of TCU.

The third factor is the extent of damage to which the statement exposed the plaintiff's reputation. When weighing this factor, the Court may consider "Was the communication defamatory on its face? Would its defamatory connotation be known only to a few? How extensive was the dissemination? How easily might the plaintiff protect his reputation by means at his own disposal?" Restatement (Second) of Torts § 580B cmt. h (2008). Here, the dissemination was extremely limited because Berry's statements were only made to a few individuals. Furthermore, no evidence has been presented to this Court that TCU's reputation was damaged, or that it was ever in any danger of being damaged. Indeed, TCU does not even allege that it has sustained any actual damage. Therefore, the Court finds that this factor weighs heavily in Berry's favor.

After weighing these factors, the Court finds that TCU has failed to meet its burden to show that Berry acted at least negligently in publishing the allegedly defamatory material. Because the Court makes this finding, it is unnecessary to analyze the other elements of defamation. Consequently, TCU is not entitled to summary judgment on its defamation counterclaim.

### 5. TCU's Motion for Fees and Costs

TCU has moved this Court to award fees and costs against Berry pursuant to the

Alabama Litigation Accountability Act, which states:

> (a) . . . [I]n any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys' fees and costs against any attorney or party, or both, who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification, either in whole or part;
> . . .
> (c) The court shall assess attorneys' fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action or any part thereof, or asserted any claim or defense therein, that is without substantial justification.

Ala. Code § 12-19-272. The Court finds that TCU has failed to meet its burden to prove that Berry brought claims that were "without substantial justification." *See Sam v. Beaird*, 685 So. 2d 742, 745 (Ala. Civ. App. 1996) (no award under §12-19-272 where plaintiff's claims are not frivolous, or pursued in bad faith or with malicious intent).

## V. CONCLUSION

As stated above, this Court finds that Defendants are entitled to summary judgment with respect to all of Plaintiffs' claims. The Court also finds that TCU is not entitled to summary judgment with respect to its counterclaims.

For the reasons set forth above, it is CONSIDERED and ORDERED that

(1) Defendants' Motions for Summary Judgment (Docs. ## 98, 103) be and the same are hereby GRANTED.

(2) Defendants' Motion for Fees and Costs Pursuant to the Alabama Litigation Accountability Act (Doc. # 98) be and the same is hereby DENIED.

(3) Defendants' Motion for Summary Judgment (Doc. # 100) be and the same is hereby DENIED.

(4) Defendants' Motions to Strike (Docs. ## 132, 135) be and the same are hereby DENIED AS MOOT.

(5)     All of Plaintiffs' claims are DISMISSED WITH PREJUDICE.

DONE this 24th day of November, 2008.

/s/ Ira Dement  
SENIOR UNITED STATES DISTRICT JUDGE